Henry DITTMER, and all others similarly situated (see exhibit A to the complaint which contains a listing of all plaintiffs and the identification of the properties they own within the Central Pine Barrens), Plaintiffs—Appellants,

v.

COUNTY OF SUFFOLK, Town of Riverhead, Town of Southampton, Town of Brookhaven, Central Pine Barrens Joint Planning and Policy Commission, Robert J. Gaffney, Ray E. Cowen, Vincent Connuscio, Felix Grucci and James Stark, Defendants—Appellees.

No. 97–9272.

United States Court of Appeals, Second Circuit.

Argued April 16, 1998.

Decided June 4, 1998.

Edward J. Ledogar, West Islip, NY, for Plaintiffs–Appellants.

James M. Tierney, Asst. Atty. Gen. of State of New York, Albany, NY (Dennis Vac-co, Atty. Gen. of State of New York, Peter Schiff, Deputy Solicitor Gen. of State of New York, Lisa Burianek, Asst. Atty. Gen. of State of New York, Albany, NY, on the brief), for Defendants–Appellees.

Before: KEARSE and MAGILL,* Circuit Judges, and HALL,** District Judge.

HALL, District Judge:

Plaintiffs appeal from the dismissal of their action for a declaratory judgment that the Long Island Pine Barrens Protection Act ("the Act") is unconstitutional on its face. The Act establishes a comprehensive land use planning and regulatory framework for the Long Island Central Pine Barrens area ("the Area"). Plaintiffs, who are Area land-owners, also sought to enjoin various state and local officials from implementing the Act. Relying on *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) and *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976), the district court found that abstention was appropriate and granted defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). Because we conclude that abstention was improper, we vacate the district court's order and remand for further proceedings.

## I. BACKGROUND

### A. The Act

Enacted in 1993 by the New York State Legislature, the Act focuses on land use and environmental protection in the Long Island Central Pine Barrens.[1] It divides the approximately 100,000 acre Area into a "Core Preservation" region and a "Compatible Growth" region. In the former, new development is essentially prohibited under the Act; restricted development can occur only in the "Compatible Growth" area. Plaintiffs

---

* Honorable Frank J. Magill of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

** Honorable Janet C. Hall of the United States District Court for the District of Connecticut, sitting by designation.

1. According to the district court, the Act has two central goals: (1) to preserve the ecosystem and (2) to protect the aquifer underlying the Area that is the sole drinking water supply for Long Island inhabitants. *Dittmer v. County of Suffolk*, 975 F.Supp. 440, 442 (E.D.N.Y.1997).

own property in the Core Preservation region.

The Act established a Planning and Policy Commission charged with the preparation of a plan to fulfill the Act's goals. Under the terms of the Act, the Commission is also responsible for reviewing permit applications for development and for determining values and setting standards for trading in "development rights." These transferable development rights ("TDRs") are designed to compensate landowners for the development restrictions imposed on the land by the Act. The Act provides for expedited state court review of any final determination made by the Commission.

## B. The state court proceeding

In 1994, two landowners in the Core Preservation region attacked the Act in state court, largely on state law grounds, in *W.J.F. Realty Corp., v. State of New York,* 672 N.Y.S.2d 1007 (1998).[2] The *W.J.F. Realty* plaintiffs complain that the government defendants refused to provide impartial review of plaintiffs' long-standing development plans, actively thwarted those plans, and sought to depress the value of plaintiffs' property in order to facilitate public procurement of the property. As in the action before us, the plaintiffs in *W.J.F. Realty* challenge the constitutionality of the Act and the Plan on due process and equal protection grounds.[3]

## C. The Dittmer Plaintiffs' Lawsuit

Plaintiffs brought this action for injunctive relief and a declaratory judgment against, among others, several towns and state and local officials. They allege that the Act and the Plan "are illegal and unconstitutional in that they deprive plaintiffs of their property interests without due process of law and deprive plaintiffs of the equal protection of law." Plaintiffs allege that the restricted development provisions and the boundaries of the Core Preservation region were arbitrarily and capriciously determined and that the method of allocating, and the uncertain value of, the TDRs violate due process and equal protection.

The defendants urged the district court to dismiss the complaint under the abstention doctrine, a doctrine comprised of four "extraordinary and narrow exception[s]" to a federal court's duty to exercise jurisdiction. *Colorado River Water Conservation District v. United States,* 424 U.S. at 813, 96 S.Ct. at 1244 (*"Colorado River"*) (internal quotation marks omitted); *see also In re Joint Eastern & Southern Dist. Asbestos Lit.,* 78 F.3d 764, 775 (2d Cir.1996). The district court rejected defendants' suggestion that abstention was appropriate under *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) (resolution of a federal constitutional question may be rendered unnecessary by a state-court interpretation of an ambiguous state law), and *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) (abstention may be appropriate to avoid interference with essential state functions such as state criminal proceedings). In granting the defendants' motion to dismiss, the district court identified two abstention categories as relevant to this case: (1) deference to state resolution of difficult state-law questions involving local regulation or important matters of local public policy, *see Burford v. Sun Oil Co.,* 319

---

2. It is not clear from the complaint in the state action whether the plaintiffs are co-owners of a single tract of land or whether each owns a part of the land referenced in the complaint. It is clear that neither plaintiff is involved in the action underlying this appeal.

3. The district court explained that "[a]s in the present action, the [*W.J.F. Realty*] Complaint ... sets forth equal protection, due process, and takings claims challenging the validity of the Act and Plan." *Dittmer v. County of Suffolk,* 975 F.Supp. 440, 442 (E.D.N.Y.1997). While both cases present equal protection and due process claims, the *W.J.F. Realty* complaint contains only

state-law-based takings claims and specifically excludes any Fifth Amendment challenge to the Act or Plan. Joint App. at 20–21. The district court viewed the *Dittmer* case as presenting a federal takings claim, but the claim is not apparent in the amended complaint.

After oral argument in this appeal, the state trial court granted summary judgment in favor of the defendants in *W.J.F. Realty* and upheld the constitutionality of the Act. *See WJF Realty Corp. v. State of New York,* N.Y.L.J., May 1, 1998, at 34. The disposition of that case does not affect the matters before us in this appeal.

U.S. 315, 63 S.Ct.. 1098, 87 L.Ed. 1424 (1943); and (2) conservation of judicial resources in those "exceptional circumstances" where concurrent state-court litigation could result in "comprehensive disposition of litigation," *Colorado River,* 424 U.S. at 817, 96 S.Ct. at 1246 (internal quotation marks omitted). We therefore examine the abstention exceptions articulated in *Burford* and *Colorado River,* and we conclude that neither supports the district court's decision to abstain from exercising jurisdiction in this case.

## II. STANDARD OF REVIEW

■ We review a district court's abstention decision for abuse of discretion. *See, e.g., Bethphage Lutheran Service, Inc. v. Weicker,* 965 F.2d 1239, 1244 (2d Cir.1992). In abstention cases, however, "[b]ecause we are considering an exception to a court's normal duty to adjudicate a controversy properly before it, the district court's discretion must be exercised within the narrow and specific limits prescribed by the particular abstention doctrine involved. Thus, there is little or no discretion to abstain in a case which does not meet traditional abstention requirements." *In re Joint Eastern & Southern Dist. Asbestos Lit.,* 78 F.3d at 775 (internal quotation marks omitted).

Under this "somewhat rigorous" abuse of discretion standard, *see, e.g., id.,* we examine whether the district court erred in dismissing plaintiffs' action based on abstention grounds.

## III. DISCUSSION

In *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), the Sun Oil Company challenged in federal court the validity of a Texas Railroad Commission order granting Burford a permit to drill certain oil wells. The Commission issued its order pursuant to a technical regulatory scheme that affected the state's oil and gas conservation system. To address this complex scheme, the state had created a comprehensive centralized system for judicial review of orders affecting the scheme. In light of these circumstances, the Court in *Burford* determined that federal court abstention from immediate review of those orders was proper because federal court litigation "threatened to frustrate the purpose of the complex administrative system that Texas had established." *Quackenbush v. Allstate Insurance Co.,* 517 U.S. 706, 725, 116 S.Ct. 1712, 1725, 135 L.Ed.2d 1 (1996).

■ Under the *Burford* doctrine, a federal court must decline to interfere with the orders or proceedings of state administrative agencies: (1) if there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) if the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans,* 491 U.S. 350, 361, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (quoting *Colorado River,* 424 U.S. at 814, 96 S.Ct. at 1247).

The district court looked to three factors in determining the instant case was appropriate for *Burford* abstention: "the degree of specificity of the state regulatory scheme, the necessity of discretionary interpretation of state statutes, and whether the subject matter of the litigation is traditionally one of state concern." *Dittmer v. County of Suffolk,* 975 F.Supp. 440, 443 (E.D.N.Y.1997) (quoting *Bethphage,* 965 F.2d at 1243).

In consideration of these factors, the court noted

> the Plan is designed not only to delineate land management practices to protect the aquifer ... and set water quality protection protocols, but to provide for the acquisition and regulation of land interests while promoting compatible uses and permitting or preventing incompatible uses.... The extensive litigation in State court to date underscores the difficulty the State has had in developing a coherent policy for managing the Area....

*Id.* The court emphasized that the transferable development rights, "a principal focus" of plaintiffs' complaint, "are subject to further local refinement." *Id.* The district court described plaintiffs' claims as "nominally facial constitutional attacks on the Act" and

concluded that their resolution demanded "not only interpretation of the Act, not only interpretation of other relevant State environmental laws, but comparative interpretation of municipal ordinances developed pursuant to the Act." *Id.* at 443–44. Noting the "extensive history" of state efforts to develop a land use policy in the Area, the district court elected to abstain from exercising jurisdiction based on the complex and comprehensive nature of the Act and its regulations and the "intensely local nature of the problem" addressed by the Act. *Id.* at 444.

■ *Burford* does not authorize this deference. "*Burford* is concerned with protecting complex state administrative processes from *undue* federal interference, [but] it does not require abstention whenever there exists such a process, or even in all cases where there is a potential for conflict with state regulatory law or policy." *New Orleans Pub. Serv.,* 491 U.S. at 362, 109 S.Ct. at 2515 (emphasis added) (internal quotation marks omitted). Federal court involvement in *Burford* was undue or inappropriate because the plaintiffs sought federal review (on largely state law claims) as a means to avoid an order issued pursuant to a constitutionally sound administrative scheme. As the Court has explained, "[t]he constitutional challenge [in *Burford* ] was of minimal federal importance, involving solely the question of whether the commission had properly *applied* Texas' complex oil and gas conservation regulations." *New Orleans Pub. Serv.,* 491 U.S. at 360, 109 S.Ct. at 2514 (emphasis added). The danger which *Burford* abstention avoids—creating an opportunity to overturn a prior state court or agency determination by seeking federal court review, thereby disrupting a state administrative apparatus—is simply not present in this case.

Here, plaintiffs raise only federal claims in a challenge to the constitutionality of the statute and its implementing regulations. They do not offer a collateral attack on a final determination made by the Commission or seek to influence a state administrative proceeding; indeed, plaintiffs have yet to invoke any administrative process under the Act. They present a direct facial attack on the constitutionality of a state statute, "a

controversy federal courts are particularly suited to adjudicate." *Alliance of American Insurers v. Cuomo,* 854 F.2d 591, 601 (2d Cir.1988) (*Burford* abstention not warranted in a challenge to the constitutionality of a state insurance statute). While plaintiffs could bring this challenge in state court, *Burford* can not be read to require or even to recommend a state court forum for these claims.

In its decision to abstain, the district court relied on *Bethphage Lutheran Service, Inc. v. Weicker,* 965 F.2d 1239 (2d Cir.1992). In *Bethphage,* this court upheld the district court's decision to abstain in a Medicaid case brought by a single provider that challenged the reasonableness of its rates as set by state officials. The court made clear that the case did not involve "systemic challenges to the rate-setting methodology" and that "[t]he factors bearing on abstention would vary depending on whether the challenge was individual or systemic." *Id.* at 1247. "Only in the case of individual challenges [to rates set by the state] would a District Court be concerned about creating funding inequities and an incentive for forum shopping." *Id.* Unlike *Bethphage* and *Burford,* this action does not present for federal review an individual determination by state officials pursuant to a constitutional statute. Rather, plaintiffs offer a clear "systemic challenge" in their claims that the Act is facially unconstitutional.

■ The district court also ruled that abstention in this case was advised under principles set forth in *Colorado River Water Conservation Dist. v. United States.* In that case, the Court explained that, in some instances, abstention would be proper on the basis of "principles ... which govern in situations involving the contemporaneous exercise of concurrent jurisdictions, either by federal courts or by state and federal courts." 424 U.S. at 817, 96 S.Ct. at 1246. *Colorado River* abstention fosters "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id.* (internal quotation marks omitted).

■ The principles of *Colorado River* are to be applied only in situations "involving

the contemporaneous exercise of concurrent jurisdictions." *Kirkbride v. Continental Cas. Co.*, 933 F.2d 729, 734 (9th Cir.1991) (emphasis omitted) (internal quotation marks omitted) (finding *Colorado River* doctrine inapplicable because there was no concurrent state court proceeding after the case was removed to federal court). Therefore, a finding that the concurrent proceedings are "parallel" is a necessary prerequisite to abstention under *Colorado River*. *See Alliance of American Insurers v. Cuomo*, 854 F.2d 591, 603 (2d Cir.1988); *Day v. Union Mines Inc.*, 862 F.2d 652, 655 (7th Cir.1988) ("Suits are parallel when substantially the same parties are contemporaneously litigating substantially the same issue in another forum." (internal quotation marks omitted)).

 In this case, the court concluded "[t]his case and the analogous State case involve complex issues of State policy that are virtually identical; were this Court not to abstain, those issues necessarily would be litigated piecemeal in State and federal courts." *Dittmer*, 975 F.Supp. at 444. However, this commonality in subject matter does not amount to the "contemporaneous exercise of concurrent jurisdictions." None of the plaintiffs in this action are involved in the state case which presents distinctly different facts and predominately state law claims. Moreover, the district court's concern for piecemeal litigation is misguided as resolution of the federal constitutional claims will determine the case before us, regardless of the outcome of the state case.

We note that, to the extent that plaintiffs sought a declaratory judgment, the district court had somewhat greater discretion to abstain. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995) (in declaratory judgment actions, district courts have "greater" discretion to abstain "than that permitted under the 'exceptional circumstances' test of *Colorado River*"). To avoid wasteful and duplicative litigation, district courts may often dismiss declaratory judgment actions "where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Id.* at 282, 115 S.Ct. 2137 (internal quotation marks omit-

ted); *see Youell v. Exxon Corp.*, 74 F.3d 373, 376 (2d Cir.1996) (per curiam). Because none of the plaintiffs in the present action are parties to the state case, however, and because the present action involves issues of federal law only, dismissal on this ground would have been inappropriate.

## IV. CONCLUSION

Plaintiffs principally argue that the Long Island Pine Barrens Protection Act is facially unconstitutional. Their claims are not at issue in a concurrent state court proceeding and do not challenge the determinations of an administrative proceeding that is itself constitutional. Accordingly, the district court abused its discretion when it abstained. We vacate the district court order and remand the case for further proceedings.